IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| JULIE ZAPOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:18-CV-954-KFP |
| | ) | |
| FRED FLANDRY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Julie Zapor brings this lawsuit against Defendant Dr. Fred Flandry, asserting two claims under the Alabama Medical Liability Act ("AMLA") related to a surgery Dr. Flandry performed on Plaintiff in 2018. Dr. Flandry filed a motion for summary judgment (Doc. 51) and supporting memorandum (Doc. 52), Plaintiff filed a response (Doc. 55) and supporting memorandum (Doc. 56), and Dr. Flandry filed a reply (Doc. 63). Upon consideration of the parties' submissions, the record, and the relevant law, Defendant's motion for summary judgment (Doc. 51) is DENIED for the reasons set forth below.

**I.    STANDARD OF REVIEW**

Under Rule 56 of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for "summary judgment if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson*, 477 U.S. at 248). "An issue is 'material' if it might affect the outcome of the case under the governing law." *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Id.* at 322–23.

Once the movant has satisfied this burden, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. In doing so, and to avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The parties must support their assertions "that a fact cannot be or is genuinely disputed" by

"citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[], admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B).

If the nonmovant "fails to properly address another party's assertion of fact as required by Rule 56(c)," then the Court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)–(3).

"In reviewing whether the nonmoving party has met its burden, the [C]ourt must stop short of weighing the evidence and making credibility determinations of the truth of the matter." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998-99 (11th Cir. 1992) (citation omitted). "Instead, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 999 (citations and internal quotations omitted). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citation omitted). Furthermore, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990); *see also Anderson*, 477 U.S. at 249–50 ("If the evidence [on

which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted.") (internal citations omitted).

## II.   STATEMENT OF UNDISPUTED FACTS

On February 6, 2018, Plaintiff met with Dr. Flandry at his office in Dothan, Alabama, complaining of pain in her left hip with some radiation. Doc. 53-1 at 19. Dr. Flandry recommended that Plaintiff undergo a left hip replacement, and Plaintiff agreed. *Id.* at 19-20. During this consultation, Plaintiff stated that she is allergic to Vicryl sutures and that she did not want Dr. Flandry to use Vicryl sutures on her. *See* Doc. 38 at 1, 2 (Dr. Flandry admits that "Plaintiff claimed to be allergic to Vicryl sutures" and the two engaged in "discussion about [Plaintiff's] alleged Vicryl allergy"); Doc. 53-6 at 28. Also, during this consultation, Plaintiff signed an informed consent form indicating her consent to the surgery. Doc. 53-16 at 41. The informed consent form did not mention Vicryl sutures or Dr. Flandry's intent to use Vicryl sutures when performing the surgery. *See* Doc. 53-6 at 106.

Prior to surgery, Dr. Flandry required that Plaintiff undergo an allergy test for Vicryl sutures, which Plaintiff did on February 8, 2018.[1] Doc. 53-8 at 9-11. Dr. Paul Motta, a board-certified allergist and immunologist, performed the allergy test and determined that the test results were negative. *Id.* at 4-5. However, Dr. Motta nevertheless made a written recommendation that Dr. Flandry not use Vicryl sutures on Plaintiff based on her medical

---

[1] Dr. Flandry contends that there was an unwritten agreement between himself and Plaintiff that, if Plaintiff tested negative for Vicryl sutures, he would use them when performing her surgery. *See* Doc. 38 at 2. Plaintiff claims that it was her understanding that Dr. Flandry would not use Vicryl sutures regardless of the allergy test results.

history. *Id.* (noting that, although Plaintiff tested negative for a Vicryl allergy, "vinyl is recommended due to recurrent rejection of suture by patient history").[2] Dr. Flandry and his staff received Dr. Motta's recommendation prior to performing Plaintiff's surgery. Doc. 59 at 112-113. Additionally, Orlando Foot and Ankle Clinic, a previous healthcare provider of Plaintiff, sent a letter to Dr. Flandry stating that he should "[p]lease refrain from using Vicryl sutures on [Plaintiff]" because she may have had a previous allergic reaction to them. Doc. 58 at 89-94. Dr. Flandry was also aware of this letter prior to Plaintiff's surgery. *Id.*

When Plaintiff arrived at the hospital for surgery, she continued to report her allergy to hospital staff. *See* Doc. 53-16 at 20, 21, 25-27, 29. However, on February 14, 2018, Dr. Flandry performed hip replacement surgery on Plaintiff and used Vicryl sutures. *Id.* at 14-15. There are other types of sutures Dr. Flandry could have used, but he personally prefers to use Vicryl. Doc. 53-6 at 24-26, 32. On March 1, 2018, Plaintiff went to American Family Care, an urgent care facility in Dothan, complaining of left hip pain and cellulitis. Doc. 53-16 at 132. Plaintiff was prescribed Minocin for her cellulitis and instructed to follow up with her orthopedist. *Id.* at 130. Thus, on March 2, 2018, Plaintiff again met with Dr. Flandry, who examined the surgical site and took a culture of the wound. *Id.* at 73. The results of the wound culture demonstrated a staphylococcus aureus infection. *Id.*

---

[2] During Dr. Motta's February 8 meeting with Plaintiff, he noted that Plaintiff "presents with . . . abscess related to vicryl[] and/or nylon sutures." Doc. 53-8 at 9. He further noted that Plaintiff had undergone eight surgeries in the past, and she reported her symptoms were known to be triggered by sutures. *Id.* Additionally, on a medical form provided to Dr. Motta, Plaintiff twice noted that she is allergic to sutures. *Id.* at 12.

5

On March 3, 2018, Plaintiff went to Southeast Alabama Medical Center and stated, "[T]his is an emergency . . . I have massive cellulitis from a hip replacement and my fever is sky high. Sepsis is already setting in." Doc. 53-9 at 22. The medical notes from that visit indicate Plaintiff has an allergy to "Vicral [sic]" sutures. *Id.* Plaintiff described an aching, sharp, tender pain in her left hip that was a 10 out of 10 on the pain scale. *Id.* at 23. The next day, Plaintiff went to the emergency room at Jack Hughston Memorial Hospital with the same complaints. Doc. 53-16 at 81. The medical notes from that visit indicate that Dr. Flandry "apparently used Vicryl sutures to which [Plaintiff] is allergic." *Id.* The notes further indicate that Plaintiff's allergies include "Vicryl sutures." *Id.* at 81-82.

That afternoon, Plaintiff met with Dr. Randall Ruark, an orthopedic surgeon, who diagnosed her with a post-operative infection and recommended surgery for irrigation debridement, femoral head exchange, and wound cleaning. *Id.* at 87-88. Dr. Ruark noted that Plaintiff was allergic to "VYCRIL SURTURES [sic]." *Id.* at 87. He further noted that Plaintiff "reported history of allergy to Vicryl suture[s] which were used" in Plaintiff's February 14 hip replacement. *Id.* at 89. On March 5, 2018, Dr. Ruark performed a left total hip arthroplasty revision and irrigation and debridement of the surgical wound. *Id.* at 91. Dr. Ruark removed all the Vicryl sutures and instead used "ethibond" and "nylon mattress" sutures. *Id.* at 91-92. Plaintiff was discharged on March 8, 2018, and she has since reported being pleased with the results of the surgery performed by Dr. Ruark. *Id.* at 102; Doc. 53-2 at 163.

Plaintiff alleges in her Complaint that, as a result of Dr. Flandry's use of Vicryl sutures in her hip replacement surgery, she "suffered a serious allergic reaction and

6

infection" that "caused her to undergo a second surgical procedure 19 days after her first procedure due to the infection."[3] Doc. 34 at 7, 13. She brings this suit for damages.

## III.  DISCUSSION

To state a claim under the AMLA, a plaintiff must demonstrate (1) "the appropriate standard of care"; (2) "[the health care provider's] deviation from that standard"; and (3) "a proximate causal connection between the [health care provider's] act or omission constituting the breach and the injury sustained by the plaintiff." *Coward v. Volvo Grp. North Am., Inc.*, No. 2:08cv744, 2009 WL 940381, at *4 (M.D. Ala. Apr. 6, 2009) (quoting *Giles v. Brookwood Health Servs., Inc.*, 5 So. 3d 533, 549 (Ala. 2008)). Dr. Flandry moves for summary judgment only as to the third element, causation. *See* Doc. 52 at 13, n.5 (stating that, while he "does not concede that he breached the standard of care," his motion "only addresses the issue of causation"). To establish causation, a plaintiff must "prove by expert testimony that . . . the breach proximately caused the plaintiff's injury."[4] *Coward*, 2009 WL 940381, at *4 (quoting *Giles*, 5 So. 3d at 549).

Dr. Flandry argues that Plaintiff cannot prove she suffered an allergic reaction to the sutures used in Plaintiff's hip replacement surgery because there is no clinical

---

[3] Dr. Flandry interprets this language to mean that Plaintiff must prove that the resulting infection was caused specifically by **an allergic reaction to** the Vicryl sutures, rather than by Dr. Flandry's use of the Vicryl sutures. This distinction is relevant to the Court's analysis below.

[4] "With regard to proximate causation in an AMLA case, . . . the plaintiff must prove, through expert medical testimony, that the alleged negligence probably caused, rather than only possibly caused, the plaintiff's injury." *Spencer v. Remillard*, ––– So. 3d ––––, 2020 WL 5268048, at *18 (Ala. 2020) (citations and internal quotation marks omitted) (emphasis in original). In the same way, "[t]he standard for proving causation in a medical-malpractice action is not proof that the complained-of act or omission was the certain cause of the plaintiff's injury. Instead, . . . the standard is one of the 'probable' cause . . . ." *Id.* (quoting *Hill v. Fairfield Nursing & Rehab. Ctr., LLC*, 134 So. 3d 396, 406 (Ala. 2013)) (emphasis added).

documentation of a Vicryl allergy in any of Plaintiff's medical records. Doc. 52 at 14. In response, Plaintiff argues that she has presented substantial evidence that she suffered an allergic reaction to the sutures used by Dr. Flandry. Doc. 56 at 7. Construing the evidence presented and all justifiable inferences drawn from the evidence in Plaintiff's favor, as this Court is required to do, the Court finds that the record establishes a genuine issue of material fact that precludes summary judgment.

First, Plaintiff has provided at least the following evidence in support of her alleged allergy to Vicryl sutures: (1) during her initial consultation with Dr. Flandry, Plaintiff stated that she is allergic to Vicryl sutures and did not want them used on her; (2) Dr. Motta noted that Plaintiff suffered from an abscess related to Vicryl sutures and recommended (in writing) to Dr. Flandry that he not use Vicryl sutures based on Plaintiff's recurrent history of adverse reactions to them; (3) Orlando Foot and Ankle Clinic sent a letter to Dr. Flandry indicating that Dr. Flandry should refrain from using Vicryl sutures on Plaintiff based on Plaintiff's medical history; and (4) Plaintiff's numerous medical notes from Southeast Alabama Medical Center, Jack Hughston Memorial Hospital, and Dr. Ruark all indicate an allergy to Vicryl sutures. Thus, as an initial matter, regardless of any *clinical* documentation of Plaintiff's alleged allergy, the record contains numerous instances in which Plaintiff experienced an adverse reaction to Vicryl sutures and in which medical providers noted a Vicryl allergy when examining Plaintiff. It is not for the Court to decide

whether those adverse reactions in fact constitute a Vicryl allergy or whether Plaintiff's medical notes are accurate.[5]

Second, Plaintiff has provided expert opinion testimony that the post-operative infection Plaintiff suffered after her first hip surgery was caused by the use of Vicryl sutures. Doc. 60 at 1. Indeed, Dr. Mitchell Blass is of the opinion, with a reasonable degree of medical certainty, that "if Vicryl sutures were not used on [Plaintiff] in the February 14, 2018 left total hip arthroplasty[,] she would not have developed the post-operative infection." *Id.* Dr. Blass's opinion is based on his review of Plaintiff's medical records and his education, training, and experience as a board-certified Infectious Disease Specialist. *Id.* Thus, Plaintiff has presented more than a mere scintilla of evidence that (1) she suffers from a Vicryl allergy and (2) she developed an infection as a result of Dr. Flandry's use of Vicryl sutures during her hip replacement surgery.

Dr. Flandry's summary judgment motion appears to hinge solely on whether there is a clear distinction between the terms "allergic reaction" and "inflammatory response." Dr. Flandry argues that Plaintiff cannot prove she suffered an allergic reaction as alleged in her Complaint in part because, at one point during his deposition, Dr. Blass indicated that Plaintiff experienced either an "allergic reaction" or an "inflammatory response" to the Vicryl sutures—a distinction without a difference in his opinion. *See* Doc. 53-13 at 98. Dr. Flandry argues that, because Plaintiff specifically alleges in her Complaint that she suffered an allergic reaction, and because Dr. Blass confirmed in his deposition that not all

---

[5] *See, e.g., Smego v. Mitchell*, No. 08-CV-3142, 2015 WL 728550, at *1 (C.D. Ill. Feb. 20, 2015) (noting that whether plaintiff had an allergy to Motrin was a factual dispute for the jury).

9

inflammatory responses are allergic reactions (*see id.* at 101-102), there is no evidence in the record that Plaintiff experienced a true allergic reaction.[6]

Based on the record before it, the Court is not persuaded that the distinction between an "allergic reaction" and "inflammatory response," to the extent there is any, is a matter to be decided on summary judgment. Indeed, both medical experts involved in this case have acknowledged that some doctors use those terms interchangeably. In his deposition, Dr. Cleveland testified that, while he does not consider the terms "allergic reaction" and "inflammatory response" to be synonymous, "[s]ome doctors use those terms interchangeably." Doc. 53-11 at 142-143. Dr. Cleveland then acknowledged that Dr. Blass, in his deposition, did use those terms interchangeably. *Id.* at 143; *see also* Doc. 53-13 at 39-40 (in response to the question, "is it your opinion as a medical doctor that when the body has an inflammatory response, let's say to a foreign object like a suture . . . that is tantamount to an allergic reaction to the suture?", Dr. Blass answered, "yes."). Dr. Blass testified that both an allergy and inflammation are reactions of the body that a patient

---

[6] The AMLA requires a plaintiff's complaint to include "a detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable . . . and shall include when feasible and ascertainable the date, time, and place of the act or acts." Ala. Code. § 6-5-551. "If the complaint affords the defendant health care provider fair notice of these essential elements, the courts should strive to find that the complaint includes the necessary detailed specification and factual description . . . ." *Mikkelsen v. Salama*, 619 So.2d 1382, 1384 (Ala. 1993) (citations and internal quotation marks omitted). Here, Plaintiff's Complaint makes clear that Dr. Flandry's allegedly wrongful act was using Vicryl sutures on her; that Dr. Flandry's allegedly wrongful act took place during her hip replacement surgery on February 14, 2018; and that, as a result of Dr. Flandry's allegedly wrongful act, she experienced an adverse reaction and infection requiring a second, corrective surgery. The Court is not persuaded that Plaintiff's use of the term "allergic reaction" rather than "inflammatory response," or vice versa, renders the Complaint insufficient under the AMLA. In any event, Dr. Flandry has not provided the Court with any case law in which a Court granted summary judgment based on distinguishing—or failing to distinguish—these two terms.

knows they have, "[w]hether you call it allergy [or] whether you call it inflammatory." Doc. 53-13 at 38. In Dr. Blass's opinion,

> it doesn't matter what you call it. It was a response to a product which the patient identified already as something that her body doesn't tolerate. Whether we call it an allergy, we call it inflammation, whatever you want to call it, nonetheless [Plaintiff] knows her body better than any of us[.]

*Id.* at 100. Thus, there appears to be a genuine factual dispute as to whether there is a recognized distinction between these terms and to what extent that distinction matters. Indeed, Dr. Blass has consistently opined that, no matter what label is assigned to Plaintiff's alleged adverse reaction, Plaintiff's post-operative infection was a direct result of the Vicryl sutures; this is in line with Plaintiff's allegation in her Complaint that she "suffered a serious allergic reaction *and infection*" as a result of the Vicryl sutures.

To the extent the exact label assigned to Plaintiff's adverse reaction, whether "allergic" or "inflammatory," is a critical distinction, the record establishes a genuine factual dispute as to whether Plaintiff experienced one, both, or neither. While Dr. Blass testified that he did not know whether Plaintiff experienced an "allergic" or an "inflammatory" reaction, he also opined throughout his deposition that Plaintiff experienced an allergic reaction. For instance, Dr. Blass stated that, in his opinion, when the body has an inflammatory response to a suture, that is tantamount to an allergic reaction to the suture. He further stated that, of the dozens of patients he has seen who experienced suture extrusion, all of them have had "[s]ome form of reaction," whether referred to as an allergy or an inflammatory response, followed by an infection and "most of them do have some form of allergic reaction." *Id.* at 105-108. He also stated that it was his opinion that

11

Plaintiff experienced a Type 3 allergic reaction to the sutures. *See id.* at 34, 41; Doc. 53-11 at 100-102. Thus, viewing Dr. Blass's testimony in its entirety, there is evidence to support a finding that Plaintiff experienced an allergic reaction, as she alleged in her Complaint. *See Kraselsky v. Calderwood*, 166 So. 3d 115, 121-22 (Ala. 2014) (emphasizing that courts should not rely on isolated excerpts from deposition testimony but should instead consider the testimony as a whole).

Accordingly, the Court cannot find, as a matter of law, that Dr. Flandry is entitled to summary judgment on the issue of causation. Contrary to Dr. Flandry's argument, summary judgment cannot be granted based on a distinction between "allergy" and "inflammation," particularly where there is evidence in the record that the terms are at times synonymous and used interchangeably in the medical field. Thus, whether Plaintiff experienced an allergic reaction, an inflammatory response, both, or neither as a result of Dr. Flandry's use of Vinyl sutures is a question that should be left to the jury.

## IV.   CONCLUSION

Accordingly, for the reasons set forth above, it is

ORDERED that Defendant's Motion for Summary Judgment (Doc. 51) is DENIED.

DONE this 11th day of March, 2021.

/s/ Kelly Fitzgerald Pate
KELLY FITZGERALD PATE
UNITED STATES MAGISTRATE JUDGE